that was perpetrated against these plaintiffs. In that context, I think we should evaluate the findings by the court. As you know, immediately after the case was remanded by this court to this report, the matter was referred to a magistrate judge for settlement purposes and not 30 days had not elapsed since the issuance or the entry of the judgment by this court that the matter was settled in a in a settlement conference that was held before the magistrate judge. Two days after the matter was settled, the judge, the magistrate judge entered the order where it was a court settlement conference report wherein he delineated the terms of the agreement that was reached by the parties and included two central clauses that are central to this issue. The first, that the parties shall maintain in strict confidentiality all the terms and conditions of the settlement agreement and the other provision which I quote, the settlement agreement shall not signify acceptance of liability regarding the facts alleged in the complaint. Four days after the entry of that order, the regional article was published wherein the appellant was supposedly quoted in the matters that are published in the article. Well, you know, because there's no, that's our first contention. There is, there was no evidence presented or no witnesses presented before the court as to what the appellant said, if anything, to that journalist that was published, that published the article. Well, you don't need a witness. You put the article in and there was no objection to the article on hearsay grounds and the article said he said A and B and the district court said he found A and B, so isn't the issue before us not this evidentiary issue but rather whether the statement of A and B violated the order? Well, but under the burden of clear and the court specifically held an evidentiary hearing and afforded the police the opportunity to bring before the court the evidence as to what was said and whether that violated or not the order, I respectfully submit that the article will not be sufficient. But that, Judge Kayane has just pointed out to a very clear evidentiary rule as far as I'm concerned. A party presents something in evidence, there's no objection, it's in evidence, and there was no objection to the article going into evidence, was there? No, there was not. All right, then let's go on forward. So taking that, then we respectfully submit that the only matters that could be evaluated for contempt purposes would be those statements that are specifically quoted as having been said by the a lot of information covered in that article that is noted in quotation marks. Can I help you a little bit? Yes. As far as I can see, the statement that was quoted or the statement that appears that is an issue here is the following, quote, this case is a vindication of the plaintiff's rights, period. It is never payment for the damages suffered and the damage will never be compensated. But at least there is that implicit recognition of the violation of the plaintiff's civil rights. Yes, your honor. That is the central statement that is attributed to the appellant. And we respectfully submit that that is not a violation of the provision. Because if you look at the article, well, why are you even looking at the article? You just, Judge Toro-Weyers just read to you that you got the district court to say those are the only two things your client is being held accountable for, those two sentences. And so the, isn't the only issue is that either one of those sentences violate the order that he shall maintain in strict confidentiality all the terms and conditions of the settlement agreement. So I think you just need to make the argument, don't you, that those two sentences don't reach the confidentiality of the terms and conditions of the settlement agreement. And they do not, they do not disclose any other. So we don't need to look at the rest of the article. Well, I was, I was going to read the sentence immediately before that quote, which, which starts, it was convenient for them, and in parentheses, the government. So you have to put that statement in context. The appellate never says, and never said, and it's not quoted as saying that the defendants admitted liability for the case. That's not said. And he's referring to them. I'm confused. He never said where, in this sentence or elsewhere? No, in the quoted, as I read that language, he never, he never says that they admitted liability. We don't, we don't care about the context. You're, you're, your guy's not being held liable for the context. He's not being held liable for any other word, period, comma, or anything. That article, there are just two quoted sentences, and the judges restricted his findings that he said those two sentences. So. Well, there's, and again, there is no mention as to the financial terms of the agreement. As a matter of fact, the article says that there's a confidentiality agreement, and the terms of the clause in the agreement, one of the two clauses you mentioned, in which the defendants did not admit to any liability, to any wrongdoing. The main, I mean, I believe is, is, is the wording of the article. Yeah, well. So, I mean, so the, the question, counsel, is when he says that their rights have been vindicated, is vindication synonymous with an admission of liability? So, the, the lower court held that it was an implicit recognition of liability. Well. And, and your position, I gather, is that vindication doesn't necessarily mean that, that there's all kinds of ways besides admissions of liability in which people can be vindicated. Yes, Your Honor. The vindication portion, I respectfully submit, clearly does not violate the agreement, and I'm basing that on the Berkey decision that the court cited, and that we cited in our reply brief. In that particular case, this court examined statements made by the plaintiff in that action that are very similar to the ones used in this case. In that case, the plaintiff said, and I quote, the settlement vindicated his contention that he was illegally terminated. It was, it was a labor case. But the plaintiff in the Berkey decision specifically said that his rights had been vindicated as a result of the settlement reached, and this court examined that language and specifically held that that did not violate a similar provision in that agreement, in that case, whereby the defendants did not admit liability. So the vindication portion, based on Berkey, I respectfully submit that that cannot be found as a violation of the order. Let's go past the vindication statement. The last part of the statement says that implicit recognition of the violation of plaintiff, of the plaintiff's civil rights. What does violation mean? Well, I would respectfully submit, Your Honor, that the important phrase in that section would be, he never discloses who is implicitly recognizing anything. He does not say defendants implicitly recognize. He's talking about the government. The government of Puerto Rico was not, I, apart to this action, the government of Puerto Rico was not a signatory to the agreement. So any statements that my client said, as to the government of Puerto Rico, would not be within the four corners of the confidentiality order that he is found to have violated. Was there, was there any term and condition of the settlement agreement that recognized implicitly or otherwise a violation of rights? No, but he's expressing, he would be expressing his opinion and his opinion would be, would be valid if it does not violate any of the provisions of the agreement. And the agreement was silent, as to whether there was a violation of rights. Well, it said that there was nothing in the agreement would be construed as a, as an omission of liability. So if he had said that the agreement says that nothing in it will be construed as a violation of it, then he would have been disclosing a term, but he didn't say that. He didn't say that. And he's not, he's not specifically attributing that statement to any other defendants and that implicit recognition, he's not attributing it to defendants, he's attributing it to the government. So that's, that is a very important distinction that has to be made. And I respectfully submit that, that has to be made given that we are facing a clear and convincing standard of proof. You know, there has to be a firm conviction that the violation of the order was, was committed. Any doubt as to what was said, whether it was a violation of the, of the order or not, must be given to the appellant. Any doubt? Is that the standard? Well, it's not beyond reasonable doubt. Well, even that, even that, there's not any doubt. You're right. You're right. But certainly there is sufficient ambiguity. I respect to submit, I respectfully submit as this court found in Berkey that there was sufficiently ambiguity in the statements in that case to not find the plaintiff in that action in contempt. And I respectfully submit that if we apply Berkey and the reasoning of Berkey and the analysis in Berkey to the, to the statements made in this case, the same result should be arrived at. But even if we were to assume that the order was violated, there is a second error that we ascribe to the judge, to the court below, which is not having eschewed the finding of contempt given the public nature of the, of this case and the highly publicized nature of this case, the court has, this court has ruled that the court has a negative discretion not to find someone in contempt for the, for the interest of justice. And we respectfully submit that in the context of the nature of the case, the highly publicized nature of the case, the court below, even if found that the order had been violated, should not have found the that no one, you know, it's a gag order against all parties disclosing the terms of civil agree, of settlement agreements and civil litigation. We don't have, we don't have stats. I did see some stats from the federal judiciary that Puerto Rico seems to be the district court with the highest percentage of cases, civil cases, where a gag order is entered for settlement purposes. And that's troubling. We have raised, there's, there's case law that we have filed, we have cited in our brief that finds that, that that's probably particularly in the context of high echelon government officials that are the defendants to the action. And, and, and, you know, the, the norm is that all proceedings are public and, and confidentiality is only an exception. And it can only be arrived at if certain parameters and factors are, are examined and, and evaluated. Mr. Ramos, the, when the, the Puerto Rico Supreme Court reversed the criminal proceedings, they did so with a written opinion? Yes, there's a written opinion. We, we, the translation is a part of the addendum and it was, it was reversed on the grounds that the defendants were not provided with expropriatory evidence, including the agreement that had been entered by the government informant that testified and subsequently recounted after one of the wrongfully convicted citizens committed suicide in prison. So, so culpability was within the public domain in any regard with respect to these individual defendants? Well, the culpability and the lack thereof, because ultimately they were, they were, the conviction was reversed with instruction for a pre-trial and the government. I don't, I mean the culpability of the state. Yes, oh yes. The culpability of, of the, of the actions by the, by the officials. Yes, that's, that's very much part of the public domain. And that's also included in the findings made by this court when this case was before this court, and the opinion or other, and the judgment were entered in May of last year. Thank you. Thank you, counsel. Good morning. May it please the court, Susana Peña-Garicano on behalf of defendants al-Paliz. I would like to first clarify the fact that of the four-prong analysis under Secocia framework, the only issue before this court would be whether Rodriguez violated the order. The other three elements are not contested. The article clearly reveals that Rodriguez provided information that plaintiffs were deemed victorious or that the government had admitted that the evidence submitted, meaning the article, is sufficient to provide for the fact that he made the statements quoted in the article. But we don't, the findings below were not predicated on him providing some information to the article. It was predicated on the only finding of fact that you have to stand on is that he said the two sentences that Judge Torroya read shortly ago. So it seems to us on the violation issue that's before us, the only question is, is there anything in either one of those two sentences that discloses a term or condition of the settlement agreement? And I couldn't find in your brief, and I would like to know here, what is it in those two sentences that violates, that discloses which term and condition of the settlement agreement? There was no, everyone, the brief seemed to assume that the district court ordered people not to talk about the settlement, but it didn't. It just said, don't disclose a term and condition of the settlement. And I'm having trouble finding in those two sentences any such disclosure. Well, Your Honor, within the terms and conditions was the issue of liability. And the... It said there's no acceptance of liability by the defendants. He didn't say that there was no acceptance of liability by any of the defendants. Well, there's the issue of non-liability. Well, that wasn't, in which the agreement didn't say that they're liable and he then disclosed it. The agreement said they're not accepting liability. He then didn't talk about liability at all. He talked about whether there was a violation of the civil rights. Well, if there's a violation, there's a liability. Well, no, no, no, no. Most, we have hundreds of civil rights cases in this circuit alone in which there's a finding that someone's rights have been violated, but there's no liability because of the immunity defenses that people have. So, their liability and violation in civil rights litigation are two entirely different concepts. Although you can't have the latter without the former, they're different. Well, Your Honor, in the defendant's opinion, the implicit recognition of violation would be the liability. That would be it. But, but... And the vindication of rights. Let me pause with that. Don't you agree that there can be a violation of someone's civil rights by a public official with absolutely no liability by the public official because of the qualified immunity? In which context, Your Honor? In the civil rights... I admit that I violated the civil rights. I admitted liability. I can't see the difference. Qualified immunity. That's what Judge Kayada keeps asking you about. You can have a violation... Oh, you mean based on immunity? Yes. Okay. Well, Your Honor, well, there's no issue of immunity here. It wouldn't be in this context. Well, but in every private action or civil rights violation against public officials, and that's what this is... Mm-hmm. Yes, Your Honor. If you just listed the elements that a court has to find, one is that there was a violation of the rights. And two is that it was done in a way that obviates any immunity defense, whether it's a sovereign immunity or qualified immunity. So he's simply... If you read him as saying that this recognized the violation of rights, there's nothing in the agreement that says that. If anything, it's a mischaracterization of the agreement, not a disclosure of a term of the agreement. And in any event, the agreement doesn't discuss violation. It discusses liability. Your Honor, the direct quote of Rodriguez talks about an implicit recognition. And for defendants, that would be an admission of liability in violation of paragraph six of docket 375. You agree he didn't use the word liability? He did not use the word liability. And if he had used the word liability, it would not have been a disclosure of a term and condition. It would have been an inaccurate description of the settlement agreement. It would be... It wouldn't be... If he admitted in the article that there was no admission of liability, that would be something that wouldn't be a mischaracterization of the... Right. It would be a disclosure. But he didn't do that. He did just the opposite. Suppose he said to the press that under the agreement, the government agreed to pay $20 million. Would that be a violation? Yes, it would be. If that was part of... How did that disclose a term or condition of the settlement agreement? By disclosing the amount of... But the amount wasn't $20 million. No, it wasn't. So it wouldn't be a disclosure. We're okay with that. We agree with the court. Yeah. We're not talking about the disclosure of the amount to be paid. But stay with my point. My point is, if he had said, the agreement provides that the government pays $200 million. Do you agree that would not have been a disclosure of a term and condition of the agreement? It would have been an inaccurate description. You mean, meaning that the $200,000 would be an incorrect amount? False. Yes. It was false. Yeah. It would be a mischaracterization. It would be false. Misleading information. So it therefore wouldn't be a breach of the confidentiality of the term and conditions. Standing on the fact that it's a false statement. Yes. It would probably... Well, I would say that he's still divulging information, even if it's false. Yeah, but see, now you've broadened the language and we're talking about a first... We're talking about a prior restraint on speech. Don't we have to be very precise? Yes, Your Honor, but we're talking... You've got a narrow order here, which is simply don't disclose a term and condition. So you've got to show not that he misdescribed the agreement, but that he actually disclosed the term and condition. I don't think he misdescribed the agreement. He implicitly... He's stating that he implicitly recognizes. But you say the agreement... There's an implicit recognition of liability in there. It doesn't say the word liability. Okay. But an implicit recognition, for me, it's liability. I don't think we're broadening the terms of the agreement. I think that just stating the implicit recognition of a violation is admitted liability. Suppose he had come right out and said they admitted liability. Okay, so we put to one side the implicit versus explicit. Would that have been a disclosure of a term and condition? Yes. Which term and condition does it disclose? Admitting liability. But there is no admission of liability in the settlement agreement. Shall not signify acceptance of liability... Exactly. ...in the facts of the complaint. There's a provision that says there's no acceptance of liability. So if he said they did accept liability, he would be falsely describing the agreement. Yes. He would be defaming them, perhaps, and subjecting himself to a civil proceeding. But he would not have disclosed any term and condition of the agreement. Your Honor, I don't think... It is the defendant's position that the fact that he did not state the word liability does not include the fact that he stated that there's an implicit recognition. I think that we're stretching this to turn it the other way around. And I think that the case of Berkey illustrates the issue. For example, in the case of Berk, there is a journalist interpretation of an article, of a reported statement. We're not before that in here. We're before a direct quote by the person who provided the quote. We're not talking about a journalist interpretation. And the court, in that case, focused on the fact that there was a statement that the settlement agreement was not an admission or evidence of liability. The court did not focus only on the quoted statement. The court went beyond and also noted the fact that the city spokesperson was also interviewed. He was quoted in the article. And the court very, very, very specifically noted that there was an issue that the settlement was not an admission of liability. Let's not talk in general terms. This is what the court said in Berkey. Berkey, I'm quoting from page 770 of the opinion. Berkey said he thought the settlement vindicated, same word, his contention that his firing was illegal. How is that different than the statement here? Because the court went... They used both. One uses vindicated, same. One uses violation. The other one uses illegal, which is even worse. Because I have implicit recognition of a violation of civil rights. And also, the court rests on the fact that it was a journalist's interpretation of a quoted statement. It was the journalist's gloss or interpretation of what someone else, in this case, was claiming. The paragraph I'm saying, I'm quoting from, starts with, in an interview, Berkey said he thought the settlement vindicated his contention that his firing was illegal. That's what he said. Yeah, but the court stated a little further down. The statement directly attributed to plaintiff, while perhaps implying more, does not directly claim that the settlement was an admission of liability. The statement that the settlement vindicated his contention that his firing was illegal appears to be the journalist's gloss on plaintiff's direct quote. So what was imputed in this case, in the Berkey case, what was the journalist interpreted of the plaintiff's quoted statement? That is not what we're hearing before the court. Here, we're challenging the direct quote, Rodriguez's direct quote, not what the journalist said. Between what I said and what you said, there's a whole quote of what he actually said. One was said by the journalist, and the other one was stated by the plaintiff. The one that I'm talking about is in quotes, so I assume that that's what was correct. Well, they're quoting the article. They're quoting the article. There's the article itself, and there's a quote inside the article, which is what plaintiff stated. Well, I won't argue with that. It is what it is. It is what it is, Your Honor. But our contention is that, unlike Berkey, we're not challenging a conduct of what a journalist stated or interpreted to be someone else's statement. Why was this motion even filed? I'm just missing the pragmatic. You had the Supreme Court of Puerto Rico find that what had been done by law enforcement collectively was so bad that it threw out criminal convictions, widespread, public, all in the public vein. You then have a suit, and then there's a settlement, and the government wants the settlement confidential and insists on a confidentiality. Well, what person reading all of that doesn't think that the government paid a bunch of money because it had some exposure? And so to then go, you're going to bring in the order of powers of the federal court to have a gag order on someone saying what is entirely obvious to virtually every citizen of Puerto Rico, I'm just mystified as to what the government's doing with these orders. Your Honor, this order, the confidentiality order came about during the settlement proceedings. It was not the result of the publication of the information. And it's done in Puerto Rico quite a bit, as well as in other jurisdictions. But doesn't the public have an interest in knowing about the behavior of their public officials, particularly when it's already in the public domain? Well, this is a civil matter, Your Honor, and we're talking about a chilling effect that would probably go against the policy of favoring settlement agreements in order to avoid costly and time-consuming litigations. We're talking about something that the parties do not want to, neither of the parties will admit liability. We're trying to settle a case out of court. We're trying not to send precedent to erroneous... Well, there's a policy of settlement, but these aren't two private entities engaging in settlement negotiations. This is defendants who are public officials whose conduct is already well within the public domain, not only because of what the Supreme Court has said, but there are 15 prior articles about what happened in this situation. Because I'm like Judge Kayotte, I couldn't figure out why anybody would even bring it. Well, Your Honor, there is a civil issue. We're not requesting that the facts related to the criminal case not be disclosed. We're talking about the confidentiality issue of a civil matter, and it's not the criminal facts or the facts related to the criminal case. And I believe that... The basis of the civil right... Well, I believe that if plaintiffs or Rodriguez or a journalist would have wanted to vacate or modify the order, they could have done so. However, the court was never placed in the position to weigh the interests at stake and to see where the good cause still exists for the order. Go back to the disclosure, because you make a good point. They didn't challenge the order. But, I mean, suppose the press had called up the lawyers who negotiated the settlement plaintiffs and said, how much money did you get? And they said, I'd love to tell you, but the government made me promise I couldn't. Is that okay? That would be fine, but I could go to court and request the court to vacate or modify the order. That would be... You think that would be a disclosure? No. Okay, so... That wouldn't be a disclosure. How is that any different than what he said here? I mean, that actually sounds worse. I don't think so, Your Honor. I think that we're talking about a vindication of plaintiff's right. We're talking an implicit recognition of a violation. If I implicit recognize I have violated a right, I would be admitted liability. Well, no, implicit doesn't mean that you agreed. What he's saying is they wouldn't have paid money if they didn't think they had some exposure. I mean, cut to the practicalities here. That's what's going on. And yet he easily could have said, they made me promise not to tell you how much money. If there's a court order, it's valid. Until it's vacated. And there's nothing... If you have a court order, I have to comply by that order. However, if they wanted to provide or make public the information, they had the means to do it. You can request the court to vacate. But they cannot go now and question the validity of an order that they never challenged. It's impossible. Until the order is in place, and it's a valid order, it hasn't been revoked or anything, it is our contention that that order has to be complied with. There were means to go around it. They could have made it public, but they have to go to the court and request the court to modify and vacate the order. All the cases cited by Rodriguez are based on a newspaper journalist requesting the court to modify and or vacate an order. It is our contention that if that's what they wanted to do, they could request the court. They could have requested the court. They cannot go under the aegis of a First Amendment right in order to violate an order. They would have had to go ahead and request the order to intervene, you know, and to weigh the interests at stake and determine whether good cause was still existent. So I know there's an issue of referral. I'm not sure if the court, because I know my time is up, the court would want me to go and discuss the issue quickly. The court is aware that he's not admitted to the bar of the district court. However, it is our contention, defendant's contention, that the referral to the Puerto Rico Supreme Court in order to review potential unethical conduct under the Puerto Rico standards of professional conduct is not a sanction itself, and it would not be reviewable. And there is no finding of an ABBA model rule violation. Thank you, Your Honor.